UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRYAN DAVID KUPFER, | ) |
| | ) CASE NO. C12-078-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) APPEAL |
| | ) |
| Defendant. | ) |

Plaintiff Bryan David Kupfer proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1964.[1]  He has a ninth grade education and previously

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

worked as a laborer and order picker. (AR 31.)

Plaintiff filed an application for DIB on February 5, 2009, alleging disability beginning December 30, 2006. He is insured for DIB through September 30, 2010. (AR 19.) Plaintiff's application was denied at the initial level and on reconsideration, and he timely requested a hearing.

On November 28, 2010, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff. (AR 40-62.) On December 23, 2010, the ALJ issued a decision finding plaintiff not disabled. (AR 19-35.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on December 20, 2011 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's substance abuse disorder and major depressive disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01  impairments did not meet or equal the criteria of a listed impairment.

02  If a claimant's impairments do not meet or equal a listing, the Commissioner must
03  assess residual functional capacity (RFC) and determine at step four whether the claimant has
04  demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to
05  perform a full range of work at all exertional levels, but, with regard to mental functioning,
06  limited to the performance of simple and some complex tasks that involve no contact with the
07  public and minimal change.   With that assessment, the ALJ found plaintiff able to perform his
08  past relevant work and, therefore, not disabled.

09  If a claimant demonstrates an inability to perform past relevant work, the burden shifts
10  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make
11  an adjustment to work that exists in significant levels in the national economy.   The ALJ also
12  proceeded in the alternative to step five.  The ALJ found plaintiff's occupational base for
13  unskilled work not significantly eroded by his nonexertional limitations, and, utilizing the
14  Medical-Vocational Guidelines as a framework, found plaintiff not disabled at step five.

15  This Court's review of the ALJ's decision is limited to whether the decision is in
16  accordance with the law and the findings supported by substantial evidence in the record as a
17  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means
18  more than a scintilla, but less than a preponderance; it means such relevant evidence as a
19  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881
20  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which
21  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278
22  F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues[2] the ALJ erred by finding his right wrist impairment not severe at step two and by failing to provide legally sufficient reasons for rejecting the opinions of certain mental health providers.  Plaintiff argues the ALJ's RFC finding was not supported by substantial evidence, and that the ALJ erred by making a step four and step five finding without the assistance of a Vocational Expert (VE).  He requests remand for further administrative proceedings.  The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

Step Two Severe Impairments

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity.  *Id*.  However, a failure to list an impairment as severe at step two of the

---

2 Plaintiff's counsel is cautioned that all pleadings, motions, and other filings must conform with Local Rule CR 10(e)(3), requiring the case number to follow the abbreviated title of the document at the left side of the bottom of each page, and the name of the law firm (if any), mailing address, and telephone number of the attorney or party preparing the document to be printed or typed at the right side of the bottom of each page.

REPORT AND RECOMMENDATION
PAGE -4

sequential evaluation may be found harmless if any limitations attributable to that impairment were considered at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)

Plaintiff contends the ALJ erred in finding his right wrist impairment not severe at step two. In support of this assignment of error, plaintiff cites the x-ray images of his right wrist showing "subchondral cysts in the lunate, triquetrum, capitates, hamate, and distal ulna and radius, suggesting osteoarthritis", as well as his testimony that his wrist bothered him "a lot" when he used it regularly. (AR 55, 312.)

Discussing plaintiff's right wrist at step two, the ALJ found as follows:

> While the claimant's representative also argued claimant has a wrist impairment, the record does not support such a finding. The record does include imaging of the claimant's right wrist, taken due to alleged pain from handcuffs. [AR 312.] The record also includes complaints of wrist pain due to heroin injection. [AR 304.] I conclude that the record lacks the objective evidence to establish that this complaint constituted a severe impairment lasting 12 continuous months nor is there any reason to expect it will.

(AR 23.)

The Court agrees with the Commissioner that plaintiff has failed to meet his burden of showing the existence of a severe impairment which lasted or was expected to last for a period of twelve months. 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.090; *Barnhart v. Walton,* 535 U.S. 212, 219 (2002) (finding reasonable the agency's application of the twelve month requirement to both the impairment and the inability to engage in substantial gainful employment). *See also Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995) (claimant has the burden of showing record evidence that her weight remained over the listed requirement for more than twelve months in order to meet the duration requirement).

In this case, while there are x-ray findings "suggesting osteoarthritis" (AR 312), there is

no medical evidence linking these findings to plaintiff's wrist pain or to any condition that significantly limited his ability to perform basic work activities. A diagnosis alone is not sufficient to establish a severe impairment. Rather, a claimant must show that his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Plaintiff argues there is no suggestion in the record that these x-ray findings in the right wrist were temporary in nature. This argument is unavailing as plaintiff bears the burden at step two. *See, e.g., Roberts,* 66 F.3d at 182 ("[Claimant] bears the burden of establishing that she met the duration requirement. She cannot discharge this burden by asserting in an appellate brief that no evidence revealed that her condition changed after the record in the case closed.")

Nor does plaintiff succeed in establishing the ALJ erred by failing to include exertional limitations resulting from a right wrist impairment in the RFC. Plaintiff argues his reports of limitations in his right wrist were "exceedingly reasonable" (Dkt. 20 at 2), but his subjective complaints were found not credible by the ALJ, a finding plaintiff does not challenge. The ALJ need not include in the RFC assessment properly discounted opinion evidence or claimant testimony. *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004). The Court, in sum, does not find error in the ALJ's step two findings.

### Opinion Evidence of Non-Acceptable Medical Sources

In evaluating the weight to be given to the opinions of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p. In this case, Patricia Larsen,

A.R.N.P., and Rebecca Sartwell, M.A., were "other sources" who provided medical services to plaintiff.  (AR 598-620.)

Less weight may be assigned to the opinions of other sources.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).   However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity."  SSR 06-03p.  "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.  The ALJ can reject the testimony of lay witnesses only upon giving germane reasons.  *Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (lay testimony from other sources may be expressly disregarded if the ALJ gives germane reasons).

Considering the November 30, 2010 report co-signed by Ms. Larsen and Ms. Sartwell (AR 638-39), the ALJ found as follows:[3]

> Finally, I considered the statement of the claimant's counselor, Ms. Sartwell.

---

3 The ALJ refers to the author of the report singly as Ms. Sartwell.  (AR 30-31.)

[AR 638-39] Ultimately, Ms. Sartwell opined that the claimant was incapable of "the necessary level of functioning needed to seek and maintain employment." [AR 638] Specifically, she opined that the claimant was incapacitated by his inability to make decisions; interact with others; maintain sustained concentration, pace, and persistence; and adapt to change/tolerate stress. I do not find Ms. Sartwell's opinion persuasive. In particular, I do not find that the claimant is unable to make decisions. According to his testimony, the claimant decided on his own that he wanted to go through the "drug court" program. He subsequently also decided to titrate his methadone dosage in order to avoid addiction to that substance. Both of these decisions contradict Ms. Sartwell's contention that the claimant was frequently unable to make good choices or follow through with seeking treatment. In fact, the claimant was required to attend numerous meetings per week in the "drug court" program. In addition, the claimant also attended NA/AA meetings. The claimant also engaged in mental health treatment with good results.

Similarly, the claimant was not as socially limited as portrayed by Ms. Sartwell. As fully outlined above, the claimant's social isolation was not as pervasive as he had portrayed, as he maintained some relationships, was able to shop, and attended baseball games. I also note that the claimant attended numerous meetings within the "drug court" program without reported problem. The claimant also used public transportation and his frequent presentation for methadone doses required him to wait with other patients to receive treatment. While the claimant testified that he did not like associating with such patients, there is no indication of any overt problems. Despite this, I note that I have limited the claimant with regard to his interaction with the public.

Ms. Sartwell alleged that the claimant also experienced significant difficulties maintaining concentration, pace and persistence. She supports this allegation by citing to the claimant's subjective reports of difficulty understanding written and verbal information and fatigue caused by alleged sleep disturbance. However, the record, including testing administered by the consultative evaluator, did not indicate that the claimant was unable to work due to limitations in this area. While Dr. Hunt noted some difficulty in this area due to preoccupation particularly regarding the claimant's "depressive symptoms, psycho-social stressors, and other issues in his life," he concluded that the claimant was able to maintain concentration and focus throughout the examination. [AR 526.] Further, he opined that the claimant was capable of performing simple and repetitive tasks as well as more detailed and complex tasks. [AR 528.] He also assigned the claimant a GAF score of 60, indicating no more than mild limitation.

Ms. Sartwell suggested that the claimant was unable to adapt to change and/or

tolerate stress; however, this is contraindicated by the evidence. Most significantly, I note that the claimant has a five year history of homelessness which requires significant adaptation and was undoubtedly stressful. Nevertheless, I have limited the claimant in the above finding to work environments that involve minimal change.

Finally, I note that on the face of the document Ms. Sartwell reports that the limitations indicated are by claimant report. *See,* [AR 28, n.6]. By contrast, her notes at [AR 598-620] indicate normal mental status examinations, e.g. [AR 600-01, 607, 612], belying to a large extent the limitations accorded by Ms. Sartwell.

(AR 30-31.)

Plaintiff argues the ALJ failed to provide specific, germane reasons for rejecting the opinions set forth in this report. The Court, however, finds the ALJ's findings legally sufficient.

Despite plaintiff's contention to the contrary, the ALJ did not completely reject the opinions. Rather, the ALJ's RFC accommodated some of the limitations identified by these providers, such as limiting plaintiff's contact with the public and specifying a work environment with minimal change. (AR 31.) With regard to the ALJ's evaluation of other lay opinions, plaintiff has, at the most, simply suggested an alternative interpretation of the evidence. Even if another interpretation of the evidence could be posited, the ALJ's interpretation, if reasonable, must be upheld by this Court. *See Thomas*, 278 F.3d at 954.

While the lay providers opined that plaintiff "has an exceedingly difficult time making decisions in his day to day life" (AR 638), the ALJ did not find plaintiff unable to make decisions, noting plaintiff's decision to participate in "drug court", to attend numerous meetings per week, to make decisions about his medication dosages, and to participate in mental health treatment with good results (AR 31). Plaintiff argues these activities are not relevant to his

capacity to make day-to-day decisions, but the Court finds it reasonable for the ALJ to consider plaintiff's ability to make such important decisions of longstanding consequence as evidence of greater decision-making capacity than that opined by the lay witnesses. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.")

Plaintiff contends the ALJ did not give germane reasons for finding him "not as socially limited as portrayed by Ms. Sartwell", noting his ability to maintain some relationships, to shop, attend baseball games, use public transportation, wait in line with other patients to receive treatment, and attend numerous meetings within the "drug court" program without reported problem. (AR 31.) Plaintiff argues it is unreasonable to equate these activities with the ability to sustain appropriate social interaction with co-workers and supervisors on a day-to-day basis, and notes his testimony about his difficulties engaging in the activities cited by the ALJ. The ALJ, however, found plaintiff's report of his activities and limitations not entirely credible, a finding plaintiff does not challenge. One does not need to be "utterly incapacitated" in order to be found disabled under the Social Security Act. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nevertheless, claims of total disability may be discredited when the claimant reports participation in everyday activities that indicate capacities transferrable to a work setting, even if those activities suggest some difficulty functioning. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). The ALJ's evaluation of lay statements will be found legally sufficient if the clear and convincing reasons given for evaluating plaintiff's testimony, such as inconsistency with daily activities, may also be applied to the lay opinions. *Id.* at 1114. The Court finds reasonable the ALJ's assessment of plaintiff's participation in daily activities.

The ALJ also found Ms. Sartwell's statement that plaintiff experienced significant difficulties maintaining concentration, pace, and persistence inconsistent with the observation and testing conducted by Dr. Hunt, showing plaintiff was able to maintain concentration and focus throughout the consultative examination, although having some difficulty due to preoccupation regarding his depressive symptoms, psycho-social stressors, and other issues in his life. (AR 31.) The Ninth Circuit has found that "[i]nconsistency with medical evidence is [a germane] reason [for discrediting lay testimony]." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ also found Ms. Sartwell's opinions regarding plaintiff's limitations undermined by the normal mental status examinations reported during her treatment sessions. *Id.* at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province.") These and all of the other reasons provided are germane to the witnesses and sufficient to support the ALJ's evaluation of the lay witness providers' opinions.

An ALJ's evaluation of lay testimony may be considered legally sufficient if based on a reason germane to the witness, although other reasons given are found not germane. *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009). Although it may be correct that homelessness requires "significant adaptation and [is] undoubtedly stressful" (AR 31), the Commissioner essentially concedes that this factor is not germane to plaintiff's ability to change and tolerate stress (Dkt. 19 at 10). However, in light of the ALJ's RFC limiting plaintiff to work environments involving minimal change, together with the other legally sufficient reasons stated by the ALJ, the Court does not find error in the ALJ's evaluation of the opinions of the lay witness providers.

## Robert Parker, Ph.D.

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Robert Parker, an examining psychologist. The ALJ gave "minimal weight" to Dr. Parker's check-off form, finding his assigned Global Assessment of Functioning (GAF) of 30 to be "so exaggerated as to be unreliable", noting Dr. Parker's opinion that plaintiff's impairment would last no more than six months, and citing Dr. Parker's lack of awareness of plaintiff's active substance use at the time of examination. (AR 30.)

Plaintiff argues that Dr. Parker was aware that substance abuse was an issue, as he diagnosed opioid dependence in six-to-seven month "reported remission" (AR 631), and Dr. Parker referenced a diagnosis by a prior examiner of substance abuse in remission (AR 634). However, plaintiff does not dispute that Dr. Parker was under the impression plaintiff had been clean since April 2008 at the time of the examination and, as the Commissioner notes, plaintiff testified that his clean and sober date was in 2009.[4] The ALJ reasonably found this discrepancy undermined the validity of Dr. Parker's opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

The ALJ also noted that Dr. Parker qualified his opinion by saying plaintiff's limitations would last for a maximum of six months, insufficient to satisfy the twelve-month duration requirement. (AR 30, 633.) *See* 20 C.F.R. §§ 404.1509, 416.909. Plaintiff argues,[5] without

---

[4] Even if plaintiff became clean and sober on July 14, 2008, as some records indicate (*see, e.g.,* AR 340), this date still post-dates Dr. Parker's examination on July 7, 2008 (AR 633).

[5] This particular argument, as it applies to the ALJ's consideration of Dr. Parker's opinion, is raised for the first time in plaintiff's Reply Brief. "[A]rguments not raised by a party in an opening

citation of supporting authority, that the duration requirement applies only to the duration of a claimant's impairments, not their resulting limitations. However, prevailing authority holds otherwise. *See Barnhart,* 535 U.S. at 219 (finding reasonable the agency's application of the twelve month requirement to both the impairment and the inability to engage in substantial gainful employment). *See also Roberts*, 66 F.3d at 182 (claimant has the burden of showing record evidence that her weight remained over the listed requirement for more than twelve months in order to meet the duration requirement). Plaintiff, therefore, fails to establish error in the ALJ's consideration of Dr. Parker's opinions.

<u>Residual Functional Capacity</u>

RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p. There is no requirement that a RFC finding directly correspond with a specific medical opinion on the functional capacity in question. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Indeed, the final responsibility for deciding issues such as an individual's RFC is reserved to the Commissioner. SSR 96-5P.

Plaintiff avers a lack of substantial evidence support for the ALJ's findings that plaintiff had only mild limitations in social functioning, only moderate limitations in maintaining concentration, persistence, and pace, and no exertional limitations. The Commissioner agrees that, because the ALJ gave "considerable weight" to the opinions of the state agency

---

brief are waived." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

psychologists and those opinions included moderate limitations in social functioning, that portion of the ALJ's RFC finding was in error. (Dkt. 19 at 12.) However, the Commissioner contends the error was harmless, as the ALJ adopted all relevant social limitations suggested by the state agency psychologists. Specifically, the consultants opined that anxiety "could impede [plaintiff's] ability to interact consistently with the public" (AR 532), and the ALJ limited plaintiff to "no contact with the public." (AR 24.) The Court agrees any error was harmless. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.") *Accord Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'") (cited sources omitted).

Further, as argued by the Commissioner, plaintiff fails to support the assertion that the ALJ should have included any limitations regarding interaction with supervisors and co-workers. The state agency psychologists found "no evidence of limitation to his ability to interact appropriately with peers or supervisors." (AR 532.) Further substantial evidence support is proffered by way of Dr. Hunt's opinion that plaintiff "should be able to work with supervisors or coworkers . . . without issue." (AR 528.) While plaintiff cites the contrary opinions of Dr. Parker, Ms. Larsen, and Ms. Sartwell, the Court finds no error in the rejection of those opinions. Likewise, the ALJ rejected the opinions of two other lay witness providers, Monique Tetzloff and James Hanken, which rejection plaintiff has not challenged. *See Batson*, 359 F.3d at 1197 (ALJ need not include in the RFC assessment properly discounted opinion evidence or claimant testimony).

Similarly, plaintiff unsuccessfully argues the ALJ erred in not adopting more stringent limitations in concentration, persistence, and pace.  The Court has found that substantial evidence supports the ALJ's reliance on the moderate limitations opined by the state agency psychologists, and the lack of weight given the opinions of the lay witness providers.   The ALJ noted plaintiff's ability to successfully complete all requirements of the "drug court" program and to comply with instructions for taking his medications, and cited Dr. Hunt's observation that, while having some difficulties maintaining pace, plaintiff was able to maintain concentration and focus throughout the examination.  (AR 24, 526.)  With regard to exertional limitations, the Court finds no error in regard to plaintiff's right wrist, and no other medical basis for any exertional impairment or limitations has been suggested.   For all of these reasons, plaintiff fails to demonstrate reversible error in the RFC assessment.

Steps Four and Five

The Commissioner concedes that the ALJ erred at step four by finding plaintiff able to perform past relevant work as a laborer and order picker. (Dkt. 19 at 14.)  However, the Commissioner argues the error was harmless because the ALJ proceeded to step five and found plaintiff "not disabled" within the framework of the Medical-Vocational Guidelines ("Guidelines" or "grids").  See *Stout*, 454 F.3d at 1055, and *Molina*, 674 F.3d at 1115.

An ALJ may rely on the grids to meet his burden at step five.   20 C.F.R. Pt. 404, Subpt. P, App. 2; *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'"  *Id.*  (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).  "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the

range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a vocational expert is required. *Id*. (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)). *Accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.")

"[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines.") *Accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."), *modified at* 794 F.2d 1348 (1986). "Nonexertional impairments may or may not significantly narrow the range of work a person can do." SSR 83-14.

Plaintiff argues the ALJ erred by relying on the grids without the testimony of a VE. However, plaintiff concedes this argument is dependent on a finding the ALJ erred by failing to find a severe right wrist impairment and by failing to assess greater mental limitations.[6] As the

---

[6] Plaintiff argues for the first time in his Reply Brief that the ALJ's limitation on contact with the public would preclude application of the grids. As with plaintiff's argument regarding the

Court has not found error in this regard, plaintiff's assignment of error to the ALJ's step five finding likewise fails.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

DATED this <u>3rd</u> day of December, 2012.

*[signature]*
Mary Alice Theiler
United States Magistrate Judge

---

evaluation of Dr. Parker's opinion, the Court finds this argument waived. *Zango, Inc.* 568 F.3d at 1177 n. 8.

REPORT AND RECOMMENDATION
PAGE -17